|   |   |   |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | UNITED STATES DISTRICT COURT | |
| 9 | CENTRAL DISTRICT OF CALIFORNIA | |
| 10 | WESTERN DIVISION | |
| 11 | SUSAN MORALES, ) | |
| 12 | Plaintiff, ) | Case No. CV 05-1244 AJW |
| 13 | v. ) | MEMORANDUM OF DECISION |
| 14 | JO ANNE B. BARNHART, ) Commissioner of the Social ) | |
| 15 | Security Administration, ) | |
| 16 | Defendant. ) | |
| 17 | ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's applications for disability insurance benefits and Supplemental Security Income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

## Administrative Proceedings

The procedural facts are undisputed. [JS 1-2]. Plaintiff filed applications for disability insurance and SSI benefits in December 2001, alleging disability since March 31, 2000. [JS 2]. A hearing was held before Administrative Law Judge Kevin M. McCormick (the "ALJ") on September 16, 2003. The ALJ denied plaintiff's applications on the grounds that she retains the residual functional capacity ("RFC") to perform light work with occasional stooping, and

that she therefore could perform her past relevant work or alternative work available in significant numbers in the national economy. [JS 2; Administrative Record ("AR") 35-37]. The Appeals Council denied plaintiff's request for review of that decision, which stands as the final decision of the Commissioner. [JS 2].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is more than a mere scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas, 278 F.3d at 954. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954. The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

## Discussion

**Treating physician's opinion**

Plaintiff contends that the ALJ erred in evaluating the opinion of Philip A. Sobol, a board-certified treating orthopedic surgeon who prepared medical reports for submission in plaintiff's worker's compensation case.

The ALJ rejected Dr. Sobol's opinions that plaintiff was "temporarily totally disabled" on the ground that those opinions were conclusory and were "routinely" generated in California workers' compensation cases, which are governed by a disability standard that "differs significantly" from the social security disability standard. [AR 29-20]. The ALJ

concluded that Dr. Sobol's "permanent and stationary" workers' compensation disability rating was consistent with an RFC for light work.

Dr. Sobol treated plaintiff for low back pain radiating into the left leg and occasional headaches from April 19, 2000 until July 20, 2000, when he discharged plaintiff from his care because he concluded that her condition was "permanent and stationary."[1] [AR 166-208]. Dr. Sobol opined at that time that plaintiff was "prophylactically limited to light work with the additional restriction of no prolonged sitting." [AR 173]. Plaintiff returned to Dr. Sobol on October 16, 2000, complaining of worsening low back and left leg pain. He opined that she was "temporarily totally disabled"[2] from that date until November 7 2001, when he again concluded that her condition had become permanent and stationary, and that she was "prophylactically limited to light work and precluded from prolonged weight-bearing and prolonged sitting." [AR 148-165, 198-208].

Even if the ALJ's reasons for rejecting Dr. Sobol's temporary total disability opinions for the period from April 19, 2000 through July 20, 2000 were inadequate, that would not amount to reversible error because he opined that she was no longer disabled at the end of that three-month period. See Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995) ("An individual is disabled within the meaning of the Social Security Act when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve

---

[1] A disability is considered "permanent and stationary" for workers' compensation purposes "after the employee has reached maximum medical improvement or his or her condition has been stationary for a reasonable period of time." Gangwish v. Workers' Compensation Appeals Bd., 89 Cal.App.4th 1284,1290 n.7 (2001) (quoting Cal.Code Regs., tit. 8, § 10152).

[2] A "period of temporary total disability" means "that period when the employee is totally incapacitated for work and during which he may reasonably be expected to be cured or materially improved with proper medical attention." W. M. Lyles Co. v. Workmen's Compensation Appeals Board, 3 Cal.App.3d 132, 136 (1969); accord, Chavira v. Workers' Comp. Appeals Bd., 235 Cal.App.3d 463, 473 (1991); see also Cal. Labor Code § 4653.

months.")(internal quotation marks and ellipsis omitted), cert. denied, 517 U.S. 1122 (1996); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The situation is different, however, for the roughly thirteen-month period of temporary total disability from October 16, 2000 through November 7, 2001. The ALJ rejected Dr. Sobol's temporary disability opinions pertaining to that period because they were conclusory and were "routinely generated" in workers' compensation cases, and because the workers' compensation disability standard "differs significantly" from the social security disability standard. It is true that the standards used to evaluate disability under the two schemes differ, but a workers' compensation claimant who is "temporarily totally disabled" due to an injury for twelve or more consecutive months satisfies the social security definition of disability as well. See Rissetto v. Plumbers and Steamfitters Local 343, 94 F.3d 597, 600, 605 (9th Cir. 1996)(stating that an individual is "temporarily totally disabled" under California workers' compensation law if that individual is "totally incapacitated" and "unable to earn any income during the period when he is recovering from the effects of the injury"); see also Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996) (explaining that workers' compensation terms are not controlling in social security cases, but that the ALJ is entitled to draw inferences logically flowing from the evidence). Thus, the differences between the two schemes did not provide a valid reason for discrediting Dr. Sobol's opinions that plaintiff was temporarily totally disabled. Moreover, an ALJ may not reject a medical opinion simply because it was rendered in connection with a workers' compensation claim. See Coria v. Heckler, 750 F.2d 245, 247-248 (3d Cir.1984) (holding that ALJ erred in failing to consider medical reports submitted in state workers' compensation proceeding); Booth v. Barnhart, 181 F.Supp.2d 1099, 1105-1109 (C.D. Cal. 2002) (discussing the principles governing the evaluation of workers' compensation medical reports).

The ALJ also rejected Dr. Sobol's temporary total disability opinions because they were "conclusory." That is not an accurate criticism. Dr. Sobol's detailed report of his October 16, 2000 examination included objective findings supporting his opinion, including positive bilateral straight-leg raising test, positive flip test, restricted range of motion with pain,

tenderness to palpation, decreased sensation to pinprick and light touch over the left L5 and S1 dermatomes, antalgic gait with a slight limp and shortened stride length favoring the left lower extremity, and abnormal MRI findings. [AR 158-164]. His diagnoses were

    1.    Thoracolumbar musculoligamentous sprain/strain with attendant left lower extremity readiculitis and May 13, 2000 MRI findings of L5-S1 central and left-sided 10 millimeter disc extrusion with compression of the thecal sac and possible impingement on the left S1 nerve root and left neural foraminal stenosis with L4-L5 broad based central posterior 3 mm. disc protusion, without evidence of impingement, with recent history of worsening, with thoracolumbar junction and mid-thoracic pain and muscle spasm.

    2.    Bi-temporal muscl contraction headaches, with recent history of worsening. [AR 162].

Dr. Sobol's subsequent progress notes cite similar objective findings as well as subjective complaints in support his extensions of plaintiff's period of temporary total disability due to her back disorder and headaches. [See AR 198-208]. Accordingly, the ALJ did not articulate specific, legitimate reasons based on substantial evidence for rejecting Dr. Sobol's opinion that plaintiff was temporarily totally disabled from October 16, 200 through November 7 2001. See Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004)(stating that "[g]reater weight must be given to the opinion of treating physicians, and in the case of a conflict 'the ALJ must give specific, legitimate reasons for disregarding the opinion of the treating physician'")(quoting Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992)).

On the other hand, the ALJ permissibly concluded that Dr. Sobol's November 9, 2001 permanent and stationary opinion was consistent with the ability to perform light work. On that date, Dr. Sobol opined that plaintiff was "prophylactically limited to light work and precluded from prolonged weight-bearing and prolonged sitting." [AR 148-165, 198-208]. Under the applicable California workers' compensation guidelines, a disability may be rated by using a "work capacity" index or a "subjective factor" index, and the final rating is based on the index yielding the higher (that is, more restrictive) rating. In workers' compensation parlance,


a "disability resulting in a limitation to light work" due to spine and torso impairments "contemplates the individual can do work in a standing or walking position, with a minimum of demand for physical effort," and corresponds to a fifty percent "standard rating." See Glass v. Workers' Comp. Appeals Bd., 105 Cal.App.3d 297, 299-300, 302 n.1 (1980); Department of Industrial Relations, Division of Workers' Compensation, State of California, "Schedule for Rating Permanent Disabilities" (April 1, 1997)(the "Rating Schedule") at 2-15 & nn.1-5.[3]

The ALJ considered whether the restrictions Dr. Sobol imposed were compatible with an RFC for light work as defined by the Commissioner. [AR 30]. The ALJ reasoned that light work contemplated the ability to stand and/or walk for six hours out of an eight-hour day, enabling plaintiff to avoid occupations that required prolonged sitting or that precluded the ability to change positions. The vocational expert identified several such jobs that a person with plaintiff's RFC could perform. [See AR 34]. In addition, the ALJ noted that Dr. Sobel's rating did not impose a specific weight limitation, and that light work requires frequent lifting and carrying of objects weighing no more than ten pounds, with only occasional lifting of objects up to twenty pounds. The ALJ rationally inferred that Dr. Sobel's opinion did not preclude lifting those weights. Further support for that conclusion is reflected in plaintiff's descriptions of her past relevant work, which involved lifting weights as heavy as 25 pounds frequently and fifty pounds occasionally. [See AR 117]. Assuming that plaintiff had lost half of her pre-injury lifting capacity, as suggested by her 50% workers' compensation standard rating, she still would be able to meet the lifting and carrying demands of light work. Cf. see also Macri, 93 F.3d at 544 (holding that a worker who had lost half of his pre-injury capacity for lifting and bending under the California workers' compensation guidelines, and whose prior job required lifting forty pounds occasionally and twenty-five pounds frequently with constant bending, could perform light work as defined by the Commissioner). Thus, the ALJ did not err

---

[3] "The standard rating represents the degree of disability for a theoretical average worker, i.e., a worker with average occupational demands on all parts of the body and at the average age of 39." Rating Schedule at 1-5; see also Universal City Studios, Inc. v. Worker's Comp. Appeals Bd., 99 Cal.App.3d 647, 653 n.3, 662-663 (1979).

in inferring that Dr. Sobol's permanent and stationary opinion was consistent with the ability to perform light work. See Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir.1997)(explaining that when the evidence is susceptible to more than one rational interpretation, and a rational explanation is provided, the ALJ's conclusion must be upheld); Macri, 93 F.3d at 544 (stating that the ALJ may draw logical inferences from workers' compensation medical reports).

In sum, the ALJ failed to articulate sufficient reasons for rejecting Dr. Sobol's treating source opinion that plaintiff was temporarily totally disabled during the closed period from October 19, 2000 through November 7, 2001. Given Dr. Sobol's status as a treating source, his expertise in the relevant specialty of orthopedics, and the objective evidence cited in Dr. Sobol's reports, the ALJ's reliance on the conflicting nonexamining state agency physicians' opinions to find plaintiff not disabled during that period was error.[4] See Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001)(stating that "the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion"). The ALJ did not err, however, in assessing Dr. Sobol's opinion and the medical evidence concerning plaintiff's RFC for the period after November 7, 2001, and that evidence supports his finding that plaintiff retained the RFC for light work with occasional stooping after that date.

**Credibility evaluation**

Plaintiff also contends that the ALJ did not properly the credibility of plaintiff's subjective testimony.

---

[4] The ALJ rejected as inconsistent with the medical evidence the opinion of the Commissioner's consultative examiner, Dr. Panossian, that plaintiff could perform medium work, and he rejected the opinion of plaintiff's treating chiropractor, Kirk Gair, because a chiropractor is not an acceptable medical source. [AR 30; 224-230]. Dr. Gair, and even to some extent Dr. Panossian, documented examination findings that were consistent with those of Dr. Sobol, such as herniated disc with nerve root compression and radiculitis, positive straight-leg raising test, reduced range of spinal motion, paraspinal tenderness, diminished sensation over the S1 dermatome, and gait abnormalities. [See AR 224-230]. Those consistencies lend additional support to Dr. Sobol's conclusions. See 28 C.F.R. § 1527(d)(2).

Plaintiff testified that she had pain and numbness in her legs and that she needed a cane for balance. [AR 285-287]. She testified that she had to lie down for most of the day, did no chores other than simple cooking, and had no social activities. [AR 287-289]. Plaintiff said she could stand for no more than five minutes, sit for no more than fifteen minutes, and walk about fifteen steps before having to stop. [AR 288-289].

The ALJ articulated several specific, convincing reasons based on substantial evidence in the record for rejecting the alleged severity of plaintiff's complaints. [See AR 31-32]. See Tonapetyan, 242 F.3d at 1148. Her alleged limitations were disproportionate to the objective medical evidence and were inconsistent with the medical opinions of record, even that of her own treating doctor (at least as to the period after November 7, 2001). [AR 31]. Plaintiff testified that she could not walk without a cane, but she did not contend that it was prescribed by a physician, and there was no evidence that her doctors prescribed an assistive device. [AR 31]. She did not seek treatment for her alleged mental health symptoms, which were not consistently reported or documented. [AR 31-32]. She was noted at times to be noncompliant with prescribed treatment, such as treatment for her diabetes mellitus and surgical intervention recommended for her allegedly disabling back impairment. [AR 32]. There were unexplained gaps in her treatment history. For example, there was no evidence she obtained treatment between November 2001, when Dr. Sobol finally discharged her from his care, and September 2002, when she reported a two-week history of back pain related to a fall. [AR 32]. Plaintiff made inconsistent statements to her treating sources, and an examining physician questioned whether she was exhibiting drug-seeking behavior. [AR 32]. Plaintiff rated her pain as only 2 out of 10 in April 2003, contradicting her hearing testimony a few months later that her pain was, and had been, incapacitating. [AR32, 243]. These reasons amply justify the ALJ's negative credibility finding.

## Conclusion

For the reasons stated above, the Commissioner's decision is **affirmed in part** and **reversed in part.**

The choice whether to reverse and remand for further administrative proceedings, or to

reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has adopted the following test, known as the "Smolen test," to determine whether evidence should be credited and the case remanded for an award of benefits:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Harman, 211 F.3d at 1178 (quoting Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996)).

The ALJ improperly rejected the treating orthopedist's opinion that plaintiff was disabled for the period from October 16, 2000 through November 7, 2001. There is no contrary treating source opinion, and the contrary non-examining source opinions are insufficient to warrant rejection of the treating source opinion, which was well-supported by objective and subjective findings. Accordingly, no useful purpose would be served by a remand for further administrative proceedings. This case is remanded for the purpose of awarding benefits based on a closed period of disability from October 16, 2000 through November 7, 2001.[5]

**IT IS SO ORDERED.**

DATED: April 20, 2006

/s/
ANDREW J. WISTRICH
United States Magistrate Judge

---

[5] Because the period for which disability insurance benefits and SSI benefits are payable to an eligible disabled claimant depends, among other things, upon when the claimant's applications were filed, this order should not be construed to order the payment of benefits to which plaintiff is not otherwise entitled under the regulations. See, e.g., 20 C.F.R. §§ 404.316, 404.621, 416.335.